# Nicholson Unemployment Compensation Case.

Argued November 17, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Richard F. Maize,* with him *Braemer and Maize,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *David Stahl,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY MONTGOMERY, J., December 14, 1961:

This is an appeal from the decision of the Unemployment Compensation Board of Review affirming the determinations of the Bureau of Employment Security and reversing the Referee wherein the Board concluded that the claimant was disqualified from receiving benefits under the provisions of section 402(b)(1), 43 P.S. 802(b)(1), on the ground that she voluntarily terminated her employment without cause of a necessitous and compelling nature.

Claimant was last employed as a selector by Anchor Hocking Glass Corporation, Connellsville, Pa. Her last day of work was April 23, 1960. Claimant was granted a leave of absence and entered a hospital in Connellsville on April 24, 1960, and underwent surgery

on April 25, 1960. She was discharged from the hospital on May 2, 1960, and returned to her home in Normalville where she was treated by her physician on May 16, June 3 and 17, 1960. She later left Normalville and went first to her sister's home in Columbia, South Carolina, and then to her mother's home in Sumter, South Carolina.

On June 27, 1960, claimant's attending physician certified that claimant was able to return to work as of July 15, 1960. On July 26, 1960, claimant sent a letter to her employer, stating in part as follows:

". . . my health has been very bad and due to this fact, I will not be able to return to work. I will appreciate it if you will terminate my employment with Anchor Hocking, since I have not been able to come back . . ."

Claimant contends that she is entitled to benefits because on July 1, 1960, her husband, who was out of work, made a trip to South Carolina to see the claimant and decided that there was a greater possibility of securing employment in South Carolina and that they would make their home there. Consequently, she claims her unemployment was due to leaving work to accompany or to join her spouse in a new locality, and since she had been the main support of her family for a period in excess of six months prior to moving, and since the new locality was not within commuting distance, her claim is governed by *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 45 A. 2d 898.

This contention is not substantiated by the facts set forth in the record. It is undisputed that the claimant originally left her employment because she had to undergo surgery. She obtained sick leave, which would have been extended for so long as the claimant was unable to perform her duties. On July 26, 1960, despite the fact that she was released by her

physician, she wrote to her employer terminating her employment because she was not physically able to return to work. Claimant subsequently never contacted the company nor did she make any effort to maintain the employer-employe relationship. It is clear from her answers in the record to questions of the employer's representative that her reason for terminating her employment was her health, and not the establishment of a home by her husband in South Carolina: "Q. When you wrote us a letter you knew you were still on the payroll because you asked to be terminated? A. Yes, but I didn't think I was going to be able to go back to work, that is why. Q. You mean due to your physical condition? A. Yes."

The *Sturdevant Unemployment Compensation Case* (supra), relied upon by the claimant is obviously inapplicable to the situation here. In *Molton Unemployment Compensation Case*, 194 Pa. Superior Ct. 190, 166 A. 2d 103, it was held that generally a physical condition which justifies an employe's leaving his employment will also prevent the employe from working at all, and consequently prevent the employe from receiving benefits. Unemployment compensation is not sickness insurance, and was not intended to compensate those who quit work because of illness. The burden of proving circumstances justifying an employe's voluntary quitting is upon the employe. Since her physician had released the claimant as able to work on July 15, and since on July 26, when she wrote her letter to the company, she offered no medical certification that she was not able to work, her unsupported statement as to her physical condition is insufficient to show cause of a necessitous and compelling nature for her voluntary termination within the meaning of section 402(b)(1).

Decision affirmed.